PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 1:17CR280 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| ISAAC L. HOBBS, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** |

Pending before the Court is Defendant's Motion to Withdraw his Plea of Guilty, made in a letter submitted to the Court. During a hearing held on March 12, 2019, the Court heard from Defendant. For the following reasons, the Court denies Defendant's Motion to Withdraw his Plea of Guilty.

## I. Background

The Court set forth the background of this case in its Memorandum of Opinion and Order on Defendant's Motion to Suppress:

> On June 5, 2017, at approximately 7:22 p.m., Greater Cleveland Regional Transit Police Officers Bidica and Dell'Anno arrested Defendant following a traffic stop. Defendant was driving a blue Chevy Malibu heading westbound on Superior Avenue. The officers testified that they saw Defendant driving in a lane marked "BUS ONLY." The officers observed Defendant make a right turn onto East Roadway when the traffic light at the intersection was red. A sign at that intersection indicated that turning right on red was not permitted.
>
> The officers stopped Defendant's car. Defendant was driving and accompanied by one passenger, Anthony Harris. During the stop, the officers detected a smell of marijuana. The officers asked Defendant if there were any guns in the car. Defendant affirmed that there was a gun in the car.

> The officers found a .22 caliber semi-automatic handgun in the car. The gun had one round in the chamber. In addition, there was an open 24-ounce container of beer in the car.
>
> The officers arrested Defendant for weapons offenses and driving under a suspended license. In a search incident to the arrest, the officers found five rounds of ammunition on Hobbs's person. The officers also arrested Harris.
>
> The events giving rise to the traffic stop occurred in downtown Cleveland at Public Square. Brittany Scully, an investigator in the Public Defender's Office, estimated that there were fifteen to twenty cameras installed in the area around Public Square to monitor activity. Indeed, Charles Brown, who heads security operations for the Greater Cleveland Regional Transit Police, testified that there were security cameras around Public Square. Brown also testified that Regional Transit does not own all of those cameras, and therefore, does not have access to them. Regional Transit only retains footage from the cameras it operates for thirty days. Other entities with mounted cameras in Public Square also only retain footage for a limited period of time.
>
> Hobbs initially faced charges in the Cuyahoga County Court of Common Pleas. That case was eventually dismissed. On July 20, 2017, Hobbs was indicted by a federal grand jury for being a Felon in Possession of a Firearm and Ammunition.

ECF No. 29 at PageID#: 128-29.

After a hearing on his Motion to Suppress, the Court denied Defendant's motion to suppress evidence obtained during the traffic stop. ECF No. 29. Defendant entered into a written plea agreement. ECF No. 44; *see* August 22, 2018, Minutes of Proceedings.

During the plea colloquy, Defendant made sworn statements substantiating his plea of guilty. Defendant, who has obtained a GED, agreed that he had read and discussed the plea agreement with his attorney before he signed it; he confirmed the Government's recitation of the substance of the plea agreement; and assured the Court that there was nothing in the agreement that he did not understand. He also agreed that he was satisfied with his attorney's assistance and representation, and he confirmed the factual basis supporting the Indictment. He acknowledged

(1:17CR280)

that he had entered the plea agreement voluntarily, and before pleading guilty to being a felon in possession of a firearm, Defendant admitted that he was pleading guilty because he was indeed guilty of the charged crime. Neither counsel nor Defendant raised issues concerning Defendant's competency, and no party had reason to question Defendant's competency.

## II. Law and Analysis

Defendant moves, pursuant to Federal Rule of Criminal Procedure 11, to withdraw his guilty plea. "'[T]he withdrawal of a guilty plea prior to sentencing is not an absolute right but is a matter within the broad discretion of the district court.'" *United States v. Spencer*, 836 F.2d 236, 238 (6th Cir. 1987), quoting *United States v. Kirkland*, 578 F.2d 170, 172 (6th Cir. 1978) (per curiam). Rule 11(d) permits the withdrawal of a guilty plea after the court has accepted it only if the defendant "can show a fair and just reason for requesting the withdrawal." The defendant has the burden to show a "fair and just reason" for withdrawal. *See, e.g., United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996); *United States v. Baez*, 87 F.3d 805, 808 (6th Cir.), *cert. denied*, 519 U.S. 973 (1996). "[T]he aim of the rule is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (internal quotation omitted), *cert. denied*, 502 U.S. 1117 (1992); *see also United States v. Hicks*, 234 F.3d 1270, at *6 (6th Cir. 2000) (quoting *Brady v. United States*, 397 U.S. 746, 756 (1970)) ("[A] defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case."). Only if the court rejects the agreement will the defendant have the opportunity to

(1:17CR280)

withdraw his plea for any reason without the "fair and just reason" requirement. *United States v. Hyde*, 520 U.S. 670, 676 (1997).

Whether a defendant has shown a fair and just reason is based on an evaluation of the totality of the circumstances, including the following seven factors:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994). No one factor is controlling. *Bazzi*, 94 F.3d at 1027.

**A. The Amount of Time Between the Guilty Plea and the Motion to Withdraw and Reason for Delay**

The first two *Bashara* factors instruct the Court to consider the length of time between a defendant's guilty plea and the motion to withdraw, and, if the time period is lengthy, the defendant's reason for the delay. *Bashara*, 27 F.3d at 1181. The Court must determine whether a defendant was reasonably prompt in moving to withdraw after entering his guilty plea. Although there is no bright-line rule as to what constitutes a "reasonable" time, the Sixth Circuit has found a delay as short as thirty-six days to be unreasonable. *United States v. Spencer*, 836 F.2d 236, 239-40 (6th Cir. 1987); *see also United States v. Valdez*, 362 F.3d 903, 913 (6th Cir. 2004) (finding an unjustified 75-day delay, on its own, was sufficient to support denial of defendant's motion to withdraw); *United States v. Benton*, 639 F.3d 723, 727 (6th Cir. 2011) (noting that the Sixth Circuit "has declined to allow plea withdrawal when intervening time

(1:17CR280)

periods were as brief as one month."). A defendant can overcome a lengthy delay with a valid reason. *Bashara*, 27 F.3d at 1181.

Defendant filed his Motion to Withdraw on February 27, 2019, 189 days after entering his guilty plea on August 22, 2018. Compared with Sixth Circuit precedent, Defendant's 189-day delay is unreasonably long. And Defendant apparently made no effort to withdraw his plea earlier, whether by communicating with counsel or by interacting with the Court directly.

As to the validity of the reason for the delay, Defendant argues that he was "misled, rushed, and coerced" into entering a plea of guilty, and that he did not understand the word "conceding" when he did so. (The plea agreement indicates that Defendant was "conceding that his conviction for Aggravated Robbery ([Case No. 05-462426]) qualifies as a violent felony under the [Armed Career Criminal Act] . . . ." ECF No. 44 at PageID#: 334.) Both assertions are belied by the record, and even if they were not, they would nevertheless not justify Defendant's delay in moving to withdraw his plea.

First, at his change of plea hearing on August 22, 2018, Defendant had multiple opportunities to complain about his counsel, yet he repeatedly affirmed, under oath, that he was satisfied with counsel's performance. At that hearing, the Court asked Defendant, "[I]s it true . . . that you're satisfied with the legal services and advice provided to you by Mr. Warner?" Defendant replied, "Yes, I'm satisfied." And despite his recent protests that he was pressured to plead, he assured the Court in August that he had not been "threatened . . . or coerced" and that he had received "no promises" other than those written in the plea agreement itself. He stated that he was "ready to get it over with and . . . just leave it in God's hands."

(1:17CR280)

Second, whether or not Defendant could have given a dictionary definition of the word "conceding" at the time he entered his plea agreement, his answers at the change of plea hearing make clear that he understood what he was doing by agreeing to plead guilty. At that hearing, the Court asked, "Do you understand that paragraph 17 [of the plea agreement] outlines rights that you would typically have that you're waiving, and rights that you're keeping and noting the concession that you're making regarding at least one prior conviction qualifying as a violent felony?" Defendant, having initialed the corresponding page in the plea agreement, replied under oath, "Yes." Moreover, the Court observes that there was a great deal of conversation about each party's concessions at the change of plea hearing, and Defendant at no point asked counsel to explain what was being said.

Near the conclusion of the change of plea hearing, the Court articulated its findings: "I think you were honest when you told me that you were satisfied with the assistance of counsel and that you were pleading guilty because you're ready to get on to the next step, and I'll repeat your words, 'Put it in God's hands.'" Defendant did not protest.

Defendant's assertions of coercion and misunderstanding are not credible. Even if they were, there was no need to wait more than six months to complain about it. If Defendant was rushed or pressured or in any way unclear about the terms of his agreement, he could have asked his counsel at any time in the ensuing six months to explain what he had done, how to undo it, and what would happen next. Defendant gives no indication that he attempted to follow up with his counsel or otherwise clarify his misunderstanding between August 22, 2018, when he pleaded guilty, and February 27, 2019, when he wrote to the Court and asked to withdraw his plea.

(1:17CR280)

The Court finds that Plaintiff waited an unreasonable and unjustified amount of time to move to withdraw his plea. Accordingly, *Bashara*'s first two factors weigh against permitting the withdrawal of Defendant's guilty plea.

**B. Failure to Assert Innocence**

The third *Bashara* factor questions whether the defendant has asserted or maintained his innocence. *Bashara*, 27 F.3d at 1181. At no point since pleading guilty on August 22, 2018, has Defendant asserted his innocence. In fact, Defendant's arguments at the March 12, 2019, hearing do not suggest innocence at all. Instead, his argument focuses on whether a prior conviction qualifies as a predicate under the Armed Career Criminal Act. Defendant's withdrawal is seemingly motivated by buyer's remorse, not innocence.

Moreover, at his change of plea hearing, Defendant stated several times, while under oath, that he is guilty of the charged crime. He swore that he was pleading guilty because he was indeed guilty of the offense charged. He confirmed that his "behavior matched the elements in the factual basis" spread on the record by the Government, and that he was "pleading guilty because [he was] guilty of the felon in possession charge[.]" Defendant also confirmed he was guilty and that the Government's allegations were accurate in his written, signed plea agreement. ECF No. 44 at PageID#: 334-36. This encourages a finding that the third *Bashara* factor weighs against withdrawal. *United States v. Catchings*, 708 F.3d 710, 719-20 (6th Cir. 2013).

**C. Circumstances Underlying the Entry of the Guilty Plea**

*Bashara*'s fourth factor instructs the Court to consider the circumstances surrounding a defendant's decision to enter a guilty plea. *Bashara*, 27 F.3d at 1181. Defendant contends that

(1:17CR280)

his counsel did not fully inform him of the terms and consequences of the plea agreement and that his plea was not knowingly and voluntarily made.

As discussed above, Defendant makes conclusory assertions that his counsel rushed and coerced him into pleading guilty without explaining the consequences of doing so, but there is no basis for those complaints, either in his letter to the Court or in his explanations at the March 12, 2019, hearing. Moreover, Defendant's assertions stand in stark contradiction to his sworn statements that his guilty plea was voluntary and not coerced, that he understood the terms and had gone over them with counsel, and that he was satisfied with his defense counsel. Defendant does not attempt to explain why his perception of events now contradicts the perception he articulated in August, under oath.

At his change of plea hearing, the Court observed that Defendant answered questions and presented himself as "attentive, forthright, a little eager, in fact." It continued, "[T]he important thing is you haven't held back. I think you've thought about what you wanted to say. You've delivered honest answers in an understandable way, and I appreciate that."

The Court finds that Defendant's since-withdrawn counsel zealously and competently represented Defendant throughout the course of litigation and that Defendant knowingly and voluntarily entered a plea of guilty. Consequently, the Court finds that the fourth *Bashara* factor weighs against withdrawal.

**D. Defendant's Nature and Background and Defendant's Prior Experience with the Criminal Justice System**

The fifth *Bashara* factor instructs the court to examine a defendant's background to determine whether the defendant lacks competence to understand and enter into a plea

(1:17CR280)

agreement. *Bashara*, 27 F.3d at 1181. A court should consider a defendant's level of education to determine whether he likely understood the terms of the plea agreement. *United States v. Martin*, 668 F.3d 787, 796 (6th Cir. 2012). Relatedly, the sixth *Bashara* factor considers whether a defendant has prior experience with the criminal justice system, making it more or less likely that he would understand the consequences of entering into a plea agreement. *Id*.

In this case, Defendant attended school through eighth grade and later earned a GED. He can read and write. Although he now claims not to have understood the dictionary definition of the word "conceding" in his plea agreement, he gave no indication at his change of plea hearing that he was unable to grasp the terms of the plea agreement or that his counsel had failed to adequately explain the plea agreement to him. Viewing his change of plea testimony in context, it seems clear that Defendant did understand the terms and consequences of his plea agreement, that he was, as the Court stated at his change of plea hearing, "prepared to accept the worst, but . . . hoping for the best."

Additionally, Defendant has extensive experience with the criminal justice system. Before this case began, Defendant was convicted on three separate occasions, once for assault on a peace officer, once for aggravated robbery with firearm specification, and once for attempted felonious assault. ECF No. 44 at PageID#: 336. Defendant is well versed in the criminal justice system and would have been able to understand the consequences of a plea agreement. *United States v. Owens*, 215 F. App'x 498, 502 (6th Cir. 2007).

For these reasons, the Court finds that the fifth and sixth *Bashara* factors weigh against allowing Defendant to withdraw his plea.

(1:17CR280)

### E. Prejudice to the Government

The seventh *Bashara* factor considers potential prejudice to the Government if the motion to withdraw were granted. The Government would be significantly prejudiced if Defendant were permitted to withdraw his plea. At the March 12, 2019, hearing, the Government pointed out that, given the amount of time that has passed since Defendant's August 22, 2018, guilty plea, withdrawal of the plea would prejudice the Government in terms of witness memories and trial preparation. Defendant does not resist the Government's position on this point.

The Government's argument is well taken. Accordingly, the Court finds that *Bashara*'s seventh factor weighs against withdrawal.

### F. Summary

Finding that the *Bashara* factors weigh against withdrawal, the Court denies Defendant's Motion to Withdraw his Plea of Guilty.

### III. Conclusion

For the reasons given, Defendant's Motion to Withdraw his Plea of Guilty is denied.

IT IS SO ORDERED.

  March 18, 2019                           */s/ Benita Y. Pearson*
Date                                           Benita Y. Pearson
                                                     United States District Judge